## Vincente PRIETO, Plaintiff–Appellant,

v.

## PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation, Defendant–Appellee.

### No. 02–15637.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 24, 2003.

Filed Jan. 9, 2004.

---

1. The California Special Education Hearing Office ("SEHO") is an administrative body that adjudicates disputes regarding the proper placement of disabled students by public school districts.

2. Although we cannot expand the record on appeal, the IDEA allows the district court to "hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(B)(ii).

Frederick C. Berry, Jr., Frederick C. Berry, Jr., P.C., Phoenix, AZ, for the plaintiff-appellant.

Scott Bales, Lewis and Roca LLP, Phoenix, AZ, for the defendant-appellee.

Before KOZINSKI and T.G. NELSON, Circuit Judges, and RESTANI,* Judge.

## OPINION

RESTANI, Judge.

### I. INTRODUCTION

Vincente Prieto ("Prieto") appeals the district court's grant of partial summary judgment and amended judgment entered in favor of Paul Revere Life Insurance Company ("Paul Revere"). We have jurisdiction under 28 U.S.C. §§ 1291 and 1294(1) (2000). For the reasons that follow, we affirm the district court's grant of summary judgment to Paul Revere on Prieto's bad faith and punitive damage claims. We reverse the district court's *sua sponte* finding of waiver and remand with instructions to award Prieto residual benefits for the period of August 1996 to August 1997.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Prieto purchased a disability insurance policy ("the policy") from Paul Revere in 1983. The policy provided for two types of disability benefits—total and residual. The policy defined total disability as follows:

"Total Disability" means that because of Injury or Sickness:

---

* The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

a. [the insured is] unable to perform the important duties of [his] regular occupation; and

b. [the insured is] not engaged in any other gainful occupation; and

c. [the insured is] under the regular and personal care of a Physician.

Total disability benefits were not payable until the ninety-first day of the disability. This ninety-day period was referred to as the "elimination period." The policy also provided for residual disability benefits, which were defined as follows:

"Residual Disability" means that because of Injury or Sickness:

a. (1) [The insured is] unable to perform all of the important duties of [his] regular occupation but [is] performing one or more important duties of that occupation; or

(2) [The insured is] engaged in another occupation; and

b. [The insured's] Monthly Earnings are reduced to 80 percent or less of [his] Prior Earnings; and

c. [The insured is] under the regular and personal care of a Physician.

Residual benefits were payable only if the disability immediately followed a period of total disability lasting for the specified "qualification period." The qualification period here was 30 days.

Prieto, who suffers from diabetes, was a chiropractic physician for 20 years. In late 1995, he developed an infection in his left foot that required the amputation of one toe on February 10, 1996. He was hospitalized for some time while his physician performed muscle and skin grafts.

Following his release, Prieto submitted a claim for disability benefits. On April 8, 1996, a Paul Revere representative, Tom Jolicoeur ("Jolicoeur"), met with Prieto at his home. During that meeting, Jolicoeur determined that Prieto was totally disabled as defined by the policy. In addition, Prieto informed Jolicoeur that he believed he would be disabled for at least five months. Because of the policy's ninety-day elimination period, Jolicoeur determined that Prieto would be entitled to two months of disability payments. Although benefits were typically paid after the ninety-day period ended, Prieto requested that he be paid in advance due to financial difficulties. Jolicoeur agreed and issued a check at that time.[1] Jolicoeur then told Prieto that if his disability continued beyond the anticipated five months, he should contact Paul Revere.

In August 1997, Prieto contacted Paul Revere to request additional benefits dating back to 1996. The following month, he sent Paul Revere a letter in which he described his disability and its effect on his ability to work, and asked Paul Revere to reconsider his claim for total or partial disability.[2] In addition to relaying what he

---

**1.** Although Jolicoeur miscalculated the monthly benefit when he wrote the check, Paul Revere issued a check for the underpayment plus interest when it discovered the error.

**2.** The letter stated in part:

In spite of not having very many patients to treat (since we lost so many patients during my illness and convalescence and my business has *never recovered* ), there has been one injury after another.... For over a year now, I have struggled to return to practice and earn my living but find it more and more difficult. On top of all of this, I find it necessary to relocate my office 6 or 7 miles north of my present location to where most of my patients are now living. I have practiced in South Phoenix for some 17 yrs now and the neighborhood has indeed changed—I must follow my patient base North. However, this move will require an increased commitment of time and effort and I'm not sure I'm capable of it. I still want to work my practice in some capacity if only part-time but I am beginning to see my limitations.

believed would be evidence supporting his claim, Prieto mentioned that he had attempted to return to work on a part-time basis from mid-May through October 1996.

In response, Paul Revere sent another representative to interview Prieto, requested his medical records, and reviewed the financial records of his chiropractic office. As a result of this investigation, Paul Revere determined that Prieto did not qualify for total disability because he still worked as a chiropractor in a limited capacity. Paul Revere also concluded that Prieto was not entitled to residual benefits because his chiropractic practice had been in decline before his 1996 surgery and it believed Prieto's reduced earnings were therefore not caused by his injury. Prieto subsequently declined Paul Revere's offer to buy out the remainder of his policy for $25,000.

On July 16, 1998, Prieto brought suit against Paul Revere in Arizona state court. Paul Revere removed the case to federal court on diversity grounds. After some discovery, Prieto filed a motion for summary judgment on his breach of contract claim, seeking an award of total disability benefits. Paul Revere filed a cross-motion for summary judgment as to Prieto's bad faith and punitive damages claims.

The district court denied Prieto's motion and held that Paul Revere had presented evidence raising a genuine issue of material fact regarding Prieto's ability to perform the important duties of his occupation. The district court granted Paul Revere's cross-motion, finding that Prieto had not submitted evidence from which a reasonable juror could conclude that Paul Revere acted in bad faith.

After a bench trial, the district court entered judgment for Prieto. It found that he was entitled to *residual* disability benefits from August 1996 to September 1999, and as a result of an additional toe amputation that occurred during litigation,

*total* disability benefits from October 1999 onward. The district court also found *sua sponte* that, because Prieto failed to contact Paul Revere between August 1996 and August 1997, Prieto had waived any claim to benefits for that time period. Prieto was awarded a total of $243,487.06 inclusive of pre-judgment interest, $124,585.50 of which was related to the August 1996–September 1999 period at issue here. This appeal followed.

## III. DISCUSSION

### A. Bad Faith

■ A claim of bad faith arises "when the insurance company intentionally denies, fails to process or pay a claim without a reasonable basis for such action." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866, 868 (1981). In this case, the district court held that Prieto had not presented evidence from which a reasonable juror could find that Paul Revere acted in bad faith and thus granted partial summary judgment to Paul Revere. On appeal, Prieto argues first that the district court misapplied Arizona law, and second that there was sufficient evidence to create a material issue of fact as to whether Paul Revere acted reasonably in denying his claim.

### 1. Arizona Law

■ Prior to 2000, Arizona courts generally held that "[a] bad faith claim cannot exist for claims that are 'fairly debatable.'" *Tobel v. Travelers Ins. Co.*, 195 Ariz. 363, 988 P.2d 148, 156 (1999) (citing *Noble*, 624 P.2d at 868). In other words, if the insurance company's grounds for denying the claim had some reasonable basis, plaintiff's bad faith claim failed. In *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276 (2000), the Arizona Supreme Court changed its approach somewhat, finding that

while fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.

995 P.2d at 280 (citing *Noble,* 624 P.2d at 868). At issue here is whether the district court erred in finding that bad faith could be decided as a matter of law on summary judgment. We review the district court's application of state substantive law in diversity cases *de novo. See, e.g., Salve Regina Coll. v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

■ The *Zilisch* court held that "[w]hile an insurer may challenge claims which are fairly debatable . . . its belief in fair debatability 'is a question of fact to be determined by the jury.' " 995 P.2d at 279 (quoting *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127, 1137 (1982)). The district court in this case held that "the conduct alleged by[Prieto did] not raise a genuine issue of material fact whether Paul Revere dealt unfairly or dishonestly with [Prieto's] claim or failed to give fair and equal consideration to his interests." Order (Feb. 27, 2000). Because this standard of law enunciated by the district court is consistent with *Zilisch*[3] and its predecessors, the district court did not err in its construction of Arizona law.

### 2. Sufficiency of Evidence

Prieto next argues that the district court erred in granting summary judgment to Paul Revere because there was sufficient evidence from which a reasonable juror could have found that Paul Revere intentionally denied his claim and thus acted in bad faith. Specifically, Prieto points to Paul Revere's: (1) focus on Prieto's loss of income; (2) minimal investigation into Prieto's medical condition; and (3) various offenses as testified to by an expert.

### a. Focus on Loss of Income

Prieto argues that his loss of income was irrelevant to his disability claim and Paul Revere's focus on his finances is thus evidence of bad faith. The policy, however, specifically provided that, to receive residual benefits there must be a reduction in monthly earnings. Prieto's suggestion that the policy was ambiguous or did not contain an income requirement is without merit, and Paul Revere's inquiry into loss of income was therefore reasonable.

■ Alternatively, Prieto contends that his loss of income was a result of his disability and Paul Revere's conclusion otherwise is evidence of bad faith. Although ultimately wrong,[4] Paul Revere's determination that Prieto's loss predated his injury was not unreasonable. Rather, it was based in part on Prieto's own statements that his practice had declined as patients relocated and the neighborhood changed. Paul Revere's focus on Prieto's loss of income and erroneous conclusion

---

**3.** Prieto also argues that the district court could not have applied the proper standard under *Zilisch* because it issued its opinion three days before *Zilisch.* The district court's test, however, did not depend on a specific definition of "fair debatability." The essential test—whether Prieto raised sufficient evidence of unreasonable behavior on the insur-

er's part to withstand summary judgment—remains the same.

**4.** The district court ultimately found that "[t]his drastic reduction [in revenue] was due, in large part, to Plaintiff's injuries which prevented him from carrying out all the important duties of his practice as he previously had." Findings of Fact ¶ 34 (Aug. 13, 2001).

that Prieto's loss preceded his disability do not, therefore, suggest bad faith.

### b. Investigation into Medical Condition

■ Prieto also argues that Paul Revere's failure to conduct a medical investigation until after it denied his claim is evidence that it never intended to settle the claim in good faith. Prieto's medical condition, however, was never at issue. Paul Revere did not claim that Prieto was not injured. Instead, it found that his injuries, serious as they may be, had not precluded Prieto from working—the ultimate inquiry under the disability policy. Nevertheless, Paul Revere interviewed Prieto in person shortly after his amputation and also requested and reviewed Prieto's medical records. This investigation does not suggest bad faith.

### c. Expert Testimony

Prieto also argues that the testimony of Dr. John C. O'Connell ("O'Connell"), an expert on insurance matters, raised a material issue of fact as to whether Paul Revere acted in bad faith. In addition to addressing Paul Revere's focus on loss of income and delay in investigating Prieto's medical condition, as discussed above, O'Connell testified that Paul Revere (1) offered Prieto an unreasonably low settlement offer; and (2) misinformed him of his rights under the policy.

■ O'Connell testified that Paul Revere's offer to purchase Prieto's policy for $25,000 was a "lowball" tactic, but he did not explain why. Without such explanation, O'Connell's testimony is insufficient to preclude summary judgment.[5]

O'Connell also testified that Paul Revere failed to inform Prieto of his rights to obtain further benefits, but the evidence in the record suggests otherwise. In April 1996, when Jolicoeur met with Prieto following his surgery, he told Prieto to contact the company if he required additional benefits.[6] Although he did not contact Paul Revere for over a year after this meeting, Prieto explained that this delay was due to his desire for independence, not lack of knowledge. Because Prieto failed to offer evidence from which a reasonable juror could conclude that Paul Revere acted in bad faith, the district court correctly held that Paul Revere was entitled to judgment as a matter of law on this claim.

### 3. Punitive Damages

Because the district court's grant of summary judgment on Prieto's bad faith claim was proper, Prieto is not eligible for punitive damages. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 733 P.2d 1073, 1080 (1987) ("Punitive damages are recoverable in insurance bad faith tort actions only if the insured acted with an 'evil mind' in breaching the implied covenant of good faith and fair dealing." (citing *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 578–

---

5. Even if Prieto could show that Paul Revere's offer was unreasonably low, there is no authority holding that such an offer is evidence of bad faith. In *Zilisch*, the court noted that an insurance company "cannot lowball claims ... hoping that the insured will settle for less." 995 P.2d at 238. Unlike that case, Paul Revere was offering to buy out Prieto's policy, not to settle an existing claim.

6. At that meeting, Prieto told Jolicoeur that his injury would last approximately five months. Jolicoeur therefore issued Prieto a

check for two months of benefits, calculating that five months of disability, less the 90 day elimination period, equaled two months of benefits. Although Jolicoeur miscalculated the benefits, *see supra* n. 1, there is no evidence that he did so intentionally or in bad faith, particularly since the check was issued on the spot and in advance. Furthermore, while Prieto suggests that Paul Revere's substantial financial losses might have given it a reason to craft a company-wide practice of denying claims outright, there was no evidence that Paul Revere did so here.

79 (1986))). The district court properly dismissed that claim.

### B. Waiver

After trial, the district court found, *sua sponte*, that Prieto had waived his entitlement to benefits for the period of August 1996–August 1997, by failing to apply for benefits as detailed in the policy and instructed by Paul Revere representatives.[7] Prieto argues that because Paul Revere did not affirmatively plead waiver as required by Federal Rule of Civil Procedure 8(c), the court effectively amended Paul Revere's Answer, and as a result, prejudiced Prieto's case by not giving him an opportunity to respond to this new legal theory.[8] Paul Revere, on the other hand, contends that even though the pleadings were never amended, waiver was actually addressed at trial and therefore appropriately adjudged by the court pursuant to Rule 15(b). The district court's finding of waiver is a legal conclusion, which we review *de novo*. *Troutt v. Colorado W. Ins. Co.*, 246 F.3d 1150, 1156 (9th Cir.2001).

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." FED. R. CIV. P. 15(b). This rule allows the pleadings to be amended to reflect the actual issues upon which a case was tried. *Campbell v. Bd. of Trs.*, 817 F.2d 499, 506 (9th Cir.1987). "[A] district court may amend the pleadings merely by entering findings on the unpleaded issues." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 n. 8 (9th Cir.1986). If evidence on an issue has already been entered, the question is whether an amendment prejudices the parties, which is no different from the question of whether the issue was tried by consent. *Consol. Data Terminals v. Applied Digital Data Sys.*, 708 F.2d 385, 396 (9th Cir.1983).

Paul Revere argues that the parties impliedly consented to the introduction of the issue of waiver because Prieto's delay in requesting additional benefits was directly addressed at trial: (1) during direct examination when Prieto was asked about his delay in contacting Paul Revere;[9] (2) on cross-examination when Prieto was questioned whether he had returned to work after his meeting with Jolicoeur;[10] and (3) on redirect and during

---

7. Under the Policy, "[w]ritten notice of claim must be given to [Paul Revere] within 30 days after a covered loss starts, or as soon as reasonably possible." Paul Revere, however, did not raise the timeliness of Prieto's claim as a defense.

8. Prieto also contends that Paul Revere expressly disclaimed all affirmative defenses. In the pretrial conference, however, Paul Revere stated that it was not raising *exclusion* as a defense. While one could infer that by stating, "the burden will be on [Prieto]," Paul Revere was stating that it was not raising any affirmative defenses, it did not expressly do so. Rather, Paul Revere was only stating that it did not intend to argue that Prieto was subject to an exclusion in the policy.

9. Q. Why did you wait until September 1997 to write this letter and make the telephone call ... [w]hy did you wait so long?

A. Well ... probably denial. I just couldn't face it that I had serious problems. And I certainly had enough to occupy me, struggling as I was to keep my practice going and keep trying to stay healthy enough to go back. I really just forgot about them. And ... I didn't want to use them. I wanted to make some type of a comeback with my practice.

Tr. at 105 (July 10–11, 2001).

10. Q. And you were aware that if you felt you could not do your job duties because of your injury or sickness, that you can go back to Paul Revere in August 1996 and ask for further benefits, correct?

A. Yes.

Q. But you didn't do so until August 21, 1997, did you?

A. That's correct.

closing arguments in the context of whether Jolicoeur had misled Prieto about the eligibility requirements for additional benefits.[11] These references to Prieto's delay in requesting benefits, however, only inferentially support the claim of waiver. Waiver was never directly addressed, and there is no indication that Prieto recognized waiver was being raised or consented to the issue being tried.[12] Because Rule 15(b) "does not permit amendments to include issues which may be 'inferentially suggested by incidental evidence in the record,'" *Patelco Credit Union v. Sahni,* 262 F.3d 897, 907 (9th Cir.2001) (quoting *Consol. Data Terminals,* 708 F.2d at 396), the district court erred in finding, *sua sponte,* that Prieto waived his entitlement to benefits.[13]

In sum, waiver was not properly pled by Paul Revere pursuant to Rule 8(c) and not properly amended by the district court under Rule 15(b). Prieto is therefore entitled to residual disability benefits for the period of August 1996–August 1997, consistent with the district court's finding that Prieto's "recurrent left foot problems qualify him for residual disability from August 1996 through September 1999." Conclusions of Law ¶ 7 (Aug. 13, 2001).

## IV. CONCLUSION

For the foregoing reasons, the district court's grant of partial summary judgment to Paul Revere on Prieto's bad faith and punitive damages claims is AFFIRMED. The district court's *sua sponte* finding of waiver is REVERSED and this matter is REMANDED for the district court to award Prieto residual disability benefits for the period of August 1996–August 1997. We award costs to appellant.

Q. Now, during this one-year period ... [f]rom May 1996 all the way through August 1997, you were going in the office everyday, right?
A. I guess.
*Id.* at 165.

11. Both parties also questioned Jolicoeur regarding this issue.

12. "Waiver of a right requires a clear showing of an intent to waive that right." *Servs. Holding Co., Inc. v. Transamerica Occidental Life Ins. Co.,* 180 Ariz. 198, 883 P.2d 435, 443 (1994) (citing *Societe Jean Nicolas et fils, J.B. v. Mousseux,* 123 Ariz. 59, 597 P.2d 541, 543 (1979)). If Prieto had recognized that waiver was being litigated, counsel presumably would have asked Prieto whether he intentionally relinquished the claim or understood that delay would preclude coverage. Moreover, the fact that Prieto eventually filed a claim shows that he did not intend to permanently waive his right to those benefits.

13. Because we find that the district court erred in finding waiver on other grounds, we need not address Prieto's argument as to whether the "notice prejudice rule" applies.