FILED

MAR 29 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>THOMAS BRYON CATTELL,<br>        Debtor. | BAP No. OR-22-1214-SLB<br><br>Bk. No. 3:19-bk-33823-DWH |
| THOMAS BRYON CATTELL,<br>        Appellant,<br>v.<br>VICTORIA D. DEEKS; GARRET<br>WELCH; CONNOR DEEKS;<br>PRICEWATERHOUSECOOPERS, LLC,<br>        Appellees. | Adv. No. 3:19-ap-03123-DWH<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Oregon
David W. Hercher, Bankruptcy Judge, Presiding

Before: SPRAKER, LAFFERTY, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Plaintiff and chapter 13[1] debtor Thomas Cattell appeals from a

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

judgment after trial in favor of defendants Victoria Deeks ("Deeks"), her son Connor Deeks ("Connor"), and Garret Welch. Cattell unsuccessfully asserted claims based on the alleged misappropriation of assets from his partnership with Deeks.

Cattell primarily focuses on the bankruptcy court's denial of his request to continue trial and on various discovery and evidentiary rulings. But he has not demonstrated how these rulings materially affected the outcome of the litigation. Nor has he met his burden on appeal to establish reversible error as to any of the other issues he has raised. Accordingly, we AFFIRM.

## FACTS[2]

**A.     The bankruptcy filing and the underlying litigation.**

Cattell filed his chapter 13 bankruptcy in October 2019. Shortly thereafter, he removed his state court litigation against Deeks to the bankruptcy court. Around the same time, he commenced a second state court action against Deeks' son Connor and others. Two of the defendants in the second action removed it to the bankruptcy court in February 2020. The court in March 2020 consolidated the two removed actions into a single adversary proceeding for all purposes. The operative complaint in the consolidated adversary proceeding was the Second Amended Complaint,

---

[2] We exercise our discretion to take judicial notice of documents readily available from the underlying bankruptcy case and adversary proceeding dockets. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

filed by Cattell's counsel in March 2021. It stated claims for dissolution of a common law partnership, equitable accounting, avoidance of preferential transfers, breach of fiduciary duty, financial abuse of a vulnerable person, declaratory judgment, avoidance of fraudulent transfers, and equitable subordination.[3]

Cattell alleged that in 2013 he entered into a partnership with Deeks without the benefit of a formal written partnership agreement (the "Partnership"). At the time of the Partnership's formation, Cattell claimed he contributed a 40-acre parcel of real property located on Skyliner Drive outside of Bend, Oregon ("Skyliner Property") to the Partnership. He and Deeks intended to develop the Skyliner Property into a campground or resort. At the time the parties created their Partnership, title to the Skyliner Property was held in the name of his solely owned corporation. Cattell later caused the corporation to transfer title to the Skyliner Property to Deeks. The Second Amended Complaint primarily alleged that Cattell suffered losses when Deeks in 2018 and 2019 disposed of the Partnership's assets including the Skyliner Property.

According to Cattell, Deeks agreed to contribute to the Partnership her income as a nurse. In addition, both parties personally incurred significant debts in furtherance of the Partnership. Some of the debts were secured by the Partnership's assets while others were unsecured.

---

[3] Deeks filed counterclaims in response to Cattell's Second Amended Complaint, but the counterclaims are not at issue in this appeal.

The loans in Deeks' name included a $190,000 loan from Carol Williams to purchase a fishing boat and fishing equipment. As Cattell alleged, the Partnership borrowed these funds so that it could engage in seasonal Alaskan salmon fishing. In addition to his experience as a builder, Cattell had worked for years as a salmon fisherman in Alaska. The fishing activities generated in aggregate over $100,000 in net income between 2014 and 2018. The Partnership also earned income from a cabin and a house that Cattell designed and built on the Skyliner Property.

All income was commingled and deposited into bank accounts in Deeks' name only. Though Cattell was not on any of these accounts, he maintained that he had full access and control over them between January 2013 and late December 2017. He stated that he was responsible for making Partnership payments from these accounts. He and Deeks also paid their personal liabilities from these same accounts.

In late July 2017, Deeks and her son Connor requested that Cattell provide them with the Partnership's books and records, which Cattell kept, along with all account numbers and passcodes necessary to access the Partnership's bank accounts online. From his conversations with Deeks and Connor, Cattell understood that Connor was working for PricewaterhouseCoopers as a certified public accountant. According to Cattell, Connor explained that he wanted to understand the Partnership's finances so that he could help the Partnership restructure, consolidate its loans, and obtain additional financing.

From that point on, Cattell alleged that Deeks and Connor removed his access to and control of the Partnership bank accounts, sold off most of the Partnership's assets, and failed to account for the sale proceeds. Cattell further alleged that some of the assets were sold for prices well below market value. He also claimed that he contributed his labor, his intellectual property, and other intangible assets into the Partnership as part of his efforts to develop the Skyliner Property and incurred significant additional trade debt for the benefit of the Partnership. He complained that Deeks and Connor subsequently denied the existence of the Partnership and never accounted for his Partnership contributions.

In July 2018, Deeks entered into a contract to sell the Skyliner Property. According to Cattell, Deeks did not tell him of the pending sale until a couple of weeks after the sale contract was entered into and refused to disclose the contents of the contract and the purchaser's name until February 2019. Deeks' sale efforts apparently led to the commencement of the parties' litigation. The initial sale fell through, but Deeks subsequently sold the Skyliner Property to defendant Garret Welch for $860,000.

## B.    The adversary proceeding moves forward.

In August 2020, while Cattell was represented by counsel, the court entered its case management order based on the parties' agreed-upon deadlines. According to the order, discovery was to conclude on January 11, 2021, initial expert disclosures were required by March 8, 2021, dispositive motions were to be filed by May 24, 2021, and a five-day trial

would commence on October 12, 2021. The trial date later was moved to December 7, 2021, but all the other deadlines remained unchanged.

In March 2021—nearly two months after the discovery cutoff—Cattell's counsel moved to amend the case scheduling order. He sought to extend the time to conduct fact discovery and to submit initial expert disclosures until May 17, 2021, with a corresponding extension of all other deadlines up to and including the pretrial conference. The bankruptcy court denied this motion.

The parties then filed cross-motions for summary judgment. The court dismissed defendant PricewaterhouseCoopers but denied the remainder of the summary judgment motions. Cattell's appeal does not challenge the bankruptcy court's summary judgment rulings, but several other pretrial proceedings from the summer and fall of 2021 are critical to this appeal.

## C.    The withdrawal of counsel and the motion to continue trial.

On July 2, 2021, Cattell's trial counsel moved to withdraw, representing that he had developed a nonwaivable conflict of interest apparently related to certain errors and omissions in his representation of Cattell. Both Cattell and his bankruptcy counsel were contemporaneously advised of the withdrawal motion. The bankruptcy court granted the motion on July 6, 2021.

On September 22, 2021, Cattell's bankruptcy counsel likewise moved to withdraw as counsel. According to bankruptcy counsel, on August 26,

2021, he formally advised Cattell by letter that he needed to find new counsel, and if he did not do so, bankruptcy counsel would move to withdraw. Bankruptcy counsel explained that, by agreement, he had been providing overflow support to former trial counsel as needed, but it was never his intent or Cattell's that he serve as lead litigation counsel or trial counsel. Bankruptcy counsel further opined that his immediate withdrawal would not adversely affect Cattell because there was "adequate time . . . to allow new counsel to be adequately prepared for trial in December." The bankruptcy court granted bankruptcy counsel's withdrawal motion on September 28, 2021.

On November 26, 2021, eleven days before the start of trial, Cattell's proposed new trial counsel Jesse London (by limited or special appearance) moved to continue trial "to begin on March 7, 2022 or to a time, no earlier than February 17, 2022." London explained that the continuance was necessary because of pre-existing commitments and his need to prepare for trial. London also explained that Cattell had not been lax in seeking new trial counsel. According to London, Cattell contacted at least four other attorneys who each took the time to review the adversary proceeding but ultimately declined to represent Cattell.

London further stated that his agreement to represent Cattell was conditioned on the grant of the motion to continue because he could not otherwise competently represent Cattell. London also maintained that the prejudice to Cattell from denial of the motion to continue would greatly

outweigh the prejudice to the defendants if the motion to continue was granted because absent the continuance, Cattell would be forced to represent himself at trial. More specifically, London suggested that significant prejudice to Cattell would occur given the amounts at stake, the involvement of real property, and Cattell's "special mental health conditions including autism which make his need for counsel all the more great."

To support the existence of Cattell's mental health conditions, London referenced the declaration of Dr. Karen McKibbin and accompanying exhibits, which Cattell's former trial counsel had submitted in support of a motion for protective order he had filed in the adversary proceeding in February 2021. Dr. McKibbin diagnosed Cattell with Autism Spectrum Disorder, Level 1, formerly known as Asperger's Disorder. Among other things she recommended that "Mr. Cattell needs to have an advocate with him for any legal or financial interactions. Mr. Cattell is not able to make accurate judgments about others or their intentions and can easily be manipulated and taken advantage of." Dr. McKibbin also opined that Cattell struggles significantly with oral communication and easily becomes confused or overwhelmed, which in turn can cause him to become "emotionally dysregulated or shut down and be unable to proceed."

The bankruptcy court denied the motion to continue. The court weighed four factors: (1) the movant's diligence in preparing for trial; (2) the purpose for and utility of the proposed continuance; (3) the

8

inconvenience to the adverse parties if the continuance was granted; and (4) the prejudice to the movant if the continuance was denied. Without going into specifics, the court acknowledged that the second and fourth factors favored granting the continuance. But the court also found that Cattell had not been diligent in seeking new counsel. As the court explained, the fact that Cattell contacted four lawyers in the hopes of them representing him between July 2, 2021 and November 26, 2021 did not demonstrate diligence. The court further found that there would be substantial inconvenience to defendant Deeks and moderate inconvenience to another defendant. The court accepted Deeks' declaration testimony that she would encounter significant difficulties in attempting to reschedule time off work for the purpose of attending trial. As for all of the defendants, the court remarked that the task of rescheduling witnesses and coordinating new trial dates represented some additional inconvenience. Considering all the factors together, the court found Cattell's lack of diligence and the inconvenience to the defendants to be more compelling and thus denied the motion to continue.

D.    **Trial and Cattell's motion for mistrial.**

The trial proceeded as scheduled. However, the court sought to accommodate Cattell's pro se status and his claimed impairment resulting from his autism. The court gave Cattell an abundance of trial time to present his case. What was estimated to be a five-day trial stretched out to a 15-day trial over the course of four months, spanning December 7, 2021 to

March 28, 2022. The court also frequently gave Cattell leeway in how he presented his case. Cattell often mixed into his evidentiary presentation a great deal of argument, which the court often permitted.

On the ninth day of trial, Cattell made an oral motion for mistrial. He argued that he had struggled greatly in presenting his case without an attorney due to his autism and difficulties in speaking and understanding what others say. Frequently, as he put it, he suffered from hearing nothing but "white noise" in his head after attempting to meaningfully engage at trial. This, in turn, would lead him to inaccurately state to the court that he had nothing else to say. As he put it, "Many times during this whole process, including just now--again, I've said it. I don't have anything else to say. I'll just move on when there's so much that needs to be said." He then complained that he was "always playing catch-up."

The court immediately denied the oral mistrial motion and reaffirmed its earlier decision to deny continuance of trial. The court acknowledged that, as evidenced by trial, Cattell indeed had "difficulties in expressing [him]self and in following direction." However, the court found that "given sufficient time, you have had an ability to say the things you wanted to say." After alluding to the accommodations that the court had afforded to Cattell to present his case, the court reiterated: "it is my judgment that you've had an opportunity to say everything that you wanted to say in support of your case." The court additionally observed that Cattell was "a participant [and witness] in most, if not all, of the events

10

that this case turns on." Thus, the court concluded that Cattell was able to testify competently about the critical events.

**E.     Submission after trial and judgment.**

At the conclusion of trial, the parties submitted closing briefs and the court took the matter under submission.[4]

On October 11, 2022, the bankruptcy court entered a memorandum decision and a judgment which found that Cattel had proven the Partnership with Deeks, but denied Cattell all relief sought based on his claims. Cattell timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158.[5]

## ISSUES

1.     Whether the bankruptcy court abused its discretion when it made multiple procedural, discovery, and evidentiary rulings, including: (a)

---

[4] Cattell did not include his closing briefs, trial exhibits, or the vast majority of his trial testimony as part of his excerpts of record. None of these items were readily accessible on the available docket. Though plaintiff's trial exhibits and closing briefs are listed on the adversary proceeding docket, the bankruptcy court restricted them from public access because they evidently contain "sensitive personal information." Accordingly, we have not reviewed them, and we are entitled to presume that there is nothing in these items helpful to Cattell's appeal. *See Haynie v. Krystal (In re Haynie)*, 624 B.R. 872, 876 n.3 (9th Cir. BAP 2021) (citing *Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 680-81 (9th Cir. BAP 1994), *aff'd*, 92 F.3d 1192 (table) (9th Cir. 1996)).

[5] As part of its decision, the court specifically found that Cattell and the remaining defendants each had consented to the bankruptcy court entering final judgment as to the subject matter of the consolidated adversary proceeding.

denial of Cattell's motion to continue trial; (b) denial of Cattell's motion for mistrial; (c) denial of Cattell's motion for protective order; (d) denial of Cattell's motion to amend the case scheduling order; (e) grant of Deeks' motion in limine; and (f) extension of the deadline for defendants to file and serve their trial exhibits.

2.      Whether the bankruptcy court erred when it denied Cattell relief on his claim for financial abuse of a vulnerable person.

3.      Whether the bankruptcy court erred when it denied Cattell relief on his claim to avoid the conveyance of the Skyliner Property as a fraudulent transfer to Garret Welch.

## STANDARDS OF REVIEW

The procedural, discovery, and evidentiary rulings are reviewed for an abuse of discretion. *United States v. Sarkisian*, 197 F.3d 966, 981 (9th Cir. 1999) (denials of motions for mistrial); *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015) (evidentiary rulings); *Sfadia v. Dongkuk Int'l, Inc (In re Sfadia)*, 2007 WL 7540987, at *6 (9th Cir. BAP Sept. 5, 2007) (discovery rulings, case management rulings, and decisions on motions for extensions and continuances). The bankruptcy court abused its discretion if it applied the incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

In appeals from a bankruptcy court's judgment after trial, "we review

the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo." *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 426 (9th Cir. BAP 2002) (citing *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002)).

## DISCUSSION

Cattell's principal arguments on appeal concern his self-representation at trial. Cattell contends that the bankruptcy court abused its discretion when it denied his motion to continue trial for the purpose of allowing his proposed replacement trial counsel time to get up to speed and prepare for trial. He similarly argues that the bankruptcy court abused its discretion when it denied his motion for mistrial. We address each of these arguments in turn.

## A. Denial of motion to continue trial.

On appeal, Cattell accepts that the bankruptcy court considered the correct factors for determining whether a trial continuance should be granted. Cattell cites to the same authority as the bankruptcy court cited, *United States v. 2.61 Acres of Land*, 791 F.2d 666, 671 (9th Cir. 1985) (identifying diligence, usefulness, inconvenience, and prejudice as the relevant factors). Cattell argues that the court unreasonably found that he had not been diligent in looking for new counsel. He also complains that contrary to the bankruptcy court's weighing of these factors, the prejudice he obviously was going to suffer from denial of the continuance greatly outweighed any inconvenience the defendants would have suffered if the

13

continuance had been granted.

Importantly, we review the record as it existed at the time the court denied the continuance motion. Based on the record presented to the bankruptcy court, we cannot conclude that the bankruptcy court's findings in support of its denial were illogical, implausible, or without support in the record. *TrafficSchool.com*, 653 F.3d at 832. And based on this record we conclude that its weighing of the factors was neither "arbitrary or unreasonable." *2.61 Acres of Land*, 791 F.2d at 671.

Cattell's appeal also suffers from another critical defect. As he acknowledges, to demonstrate reversible error he was required to show that the denial of the continuance actually resulted in prejudice to his prosecution of his claims. Aplt. Opn. Br. at 59 (citing *United States v. Mitchell*, 744 F.2d 701, 704 (9th Cir. 1984); *See also 2.61 Acres of Land,* 791 F.2d at 671 ("Absent a showing of prejudice suffered by the appellant . . . this Court will not disturb the ruling below."). He has not done so.

*Mitchell* is quite instructive. There, the criminal defendant appealed his conviction for mail fraud and for filing a false income tax return. 744 F.2d at 703. On appeal the defendant argued that the district court abused its discretion by denying a request to continue the start of his trial for two weeks. *Id.* at 704. Concluding that the defendant had failed to demonstrate reversible error, *Mitchell* explained:

> Mitchell claims the 43-day pretrial period was inadequate because the case was complex and his counsel's own schedule prevented her

14

> from thoroughly preparing the defense. He does not specify what defense theories his counsel might have explored, what aspects of the case she was unable to investigate, or what witnesses might have been interviewed.

*Id.* at 705.

Similar to *Mitchell*, Cattell's appeal brief is bereft of any discussion indicating what counsel would have done differently that might have resulted in a different outcome. There is absolutely no reference to excluded evidence that counsel would have succeeded in presenting, trial examination that would have been conducted, or what such evidence might have shown on Cattell's behalf to suggest a different result. Furthermore, as a result of counsel's failure to present us with a more complete record, we only can speculate regarding how effective or ineffective Cattell was overall in representing himself.

It is apparent from Cattell's appeal briefs—and the limited trial transcript excerpts provided—that Cattell encountered multiple frustrating, stressful, and repeated difficulties in representing himself. During trial Cattell sometimes had emotional outbursts or temporarily shut down. But the bankruptcy court sought to address and accommodate these situations, often by affording Cattell additional time. The difficulties and outbursts are not by themselves prejudicial—especially in a trial to the bench. Indeed, the bankruptcy court found that despite these difficulties Cattell had been successful over the course of his trial in saying what he really wanted to say. And Cattell effectively has done nothing on appeal to

challenge this finding. Additionally, the trial transcript excerpts provided indicate that Cattell was successful in obtaining admission of a sizable portion of his trial exhibits.

When asked at oral argument on appeal to specifically identify the prejudice, Cattell's counsel suggested that the exclusion of his expert testimony regarding the value of the Skyliner Property demonstrated prejudice caused by his self-representation at trial. We disagree. As we explain below, Cattell's valuation expert testimony was excluded from trial because of his former litigation counsel's actions, or more appropriately his delay in acting, while he still represented Cattell. While represented, Cattell's counsel failed to comply with the deadline for expert disclosures and failed to obtain an extension of those deadlines. Exclusion of Cattell's valuation expert was not a result of Cattell's self-representation.

Cattell has not demonstrated that any specific evidence or argument was curtailed or excluded over the extended trial period as a result of his self-representation. The bankruptcy court gave Cattell considerable additional time and leeway. He was also afforded the opportunity to present his closing argument in writing after the close of evidence. In short, on the record presented and in the absence of any meaningful discussion of prejudice, he has not established that the bankruptcy court committed reversible error when it denied the motion to continue the trial.

## B.    Denial of motion to declare a mistrial.

Though Cattell asked at trial for the bankruptcy court to declare a

16

"mistrial," he argues on appeal that his oral motion for mistrial actually was a motion for new trial under Civil Rule 59, made applicable in bankruptcy cases and adversary proceedings by Rule 9023. Appellees have not challenged this characterization, so we will analyze the mistrial motion as if it had been presented as a motion for new trial under Civil Rule 59(a).[6]

Civil Rule 59(a) provides in relevant part that:

[t]he court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

> (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

The Ninth Circuit applies different factors for motions for new trial in jury trials as opposed to bench trials. *Compare Passantino v. Johnson &*

---

[6] On its face, Civil Rule 59(a) gives the court authority to grant a new trial only "after" trial has occurred. Here, Cattell requested a mistrial while trial was pending. Nonetheless, Civil Rule 59(a) is what Cattell has argued. We are only obliged to consider arguments that Cattell has specifically and distinctly made on appeal. *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010). Furthermore, Cattell would have fared no better even if his appeal brief had treated the subject motion as a motion for mistrial as originally styled. Motions for mistrial typically are effective only in jury trials and also typically require a demonstration of prejudice. *See, e.g., B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1105–06 (9th Cir. 2002); *see also* Rutter Grp. Prac. Guide: Fed. Civ. Trials and Evidence (2024) ("A motion for mistrial is usually a realistic option only in a jury trial. Judges in nonjury trials rarely feel that attorney misconduct affects their ability to decide impartially.").

*Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) ("The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.") *with Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978) ("There are three grounds for granting new trials in court-tried actions under Rule 59(a)(2): (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence."); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 n.4 (9th Cir. 2007) (acknowledging and reaffirming distinct standards).

The bankruptcy court here held a bench trial. But Cattell cites to and attempts to apply the *Passantino* standard rather than the *Brown* standard. As a result, his appellate argument on this point is not particularly helpful or persuasive. He contends that trial was fundamentally unfair to him or constituted a miscarriage of justice, citing factors he borrows from *Passantino* and its predecessors. Under the applicable legal standard from *Brown,* Cattell was required to show either manifest error of law or fact or newly discovered evidence as the basis for a new trial. Nothing in his briefing on appeal suggests an error of law–manifest or otherwise. Factually, Cattell relies on the same myriad excerpts from the trial transcripts discussed above in our review of the denial of the motion to continue. And, as further discussed above, Cattell's struggles at trial, by themselves, do not justify reversal. As with the denial of the continuance motion, a trial court does not commit reversible error in denying a motion

for new trial in the absence of demonstrated prejudice.

Civil Rule 61—governing harmless error—dictates this result. As one leading treatise explained:

> The importance of Rule 61 in its application to motions for a new trial cannot be overlooked. It provides specifically that "unless justice requires otherwise," no error "is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." It further admonishes the courts to "disregard all errors and defects that do not affect any party's substantial rights." **Thus it is only those errors that have caused substantial harm to the losing party that justify a new trial. Those errors that are not prejudicial do not call for relief under Rule 59**.

11 Charles A. Wright, Arthur Miller, & Mary Kay Kane, Fed. Prac. and Proc. § 2805 (3d ed. 2024) (emphasis added and citations and footnotes omitted). Decisions of district courts in the Ninth Circuit are consistent with Wright & Miller's observations. *See, e.g., Morris v. Aetna Life Ins. Co.*, 2021 WL 12180686, at *2 (C.D. Cal. Oct. 14, 2021) ("A new trial may be ordered to correct manifest errors of law or fact, but the burden of showing harmful error rests on the party seeking the new trial" (cleaned up)); *Zuniga-Hurtado v. Holder*, 2013 WL 3833212, at *1 (D. Ariz. July 24, 2013) ("[h]armless errors encountered during the course of a proceeding are not proper grounds for new trial or amendment of a judgment." (quoting *Rygg v. Cnty. of Maui*, 122 F.Supp.2d 1140, 1158 (D. Haw. 2000))); *SK hynix Inc. v. Rambus Inc.*, 2013 WL 1915865, at *13 (N.D. Cal. May 8, 2013) (stating that a party seeking new trial based on newly discovered evidence must

demonstrate, among other things, that "the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." (citation omitted)).

As we stated above, Cattell has failed either to explain or demonstrate what additional or different evidence he was unable to present or how it might have changed the outcome of the underlying adversary proceeding. This failure is fatal to Cattell's challenge of the bankruptcy court's denial of his motion for new trial.

## C. Cattell's other arguments.

Cattell has made several other arguments. As described below, most of the arguments challenge the bankruptcy court's procedural, discovery, and evidentiary rulings. However, according to Cattell, the court also erred when it denied him any relief on his claims for financial abuse of a vulnerable person and for avoidance of fraudulent transfers. We first dispose of the challenges to the procedural, discovery, and evidentiary rulings. We then address the two denied claims for relief that Cattell challenges.[7]

---

[7] Cattell also seeks to challenge the denial of his motion for a stay pending appeal, which he sought immediately after the court denied his motion to continue trial. Cattell filed an interlocutory appeal from that ruling. But we denied leave to appeal that interlocutory order and dismissed that appeal on finality grounds. *Cattell v. Deeks (In re Cattell)*, BAP No. OR-21-1273 (Feb. 10, 2022). Trial concluded long ago, so Cattell's challenge to the denial of his motion for a stay pending appeal has been rendered moot. *See Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007).

## 1.    Procedural, discovery, and evidentiary rulings.

Cattell contends that the bankruptcy court abused its discretion by granting the defendants an additional day to file and serve their trial exhibits. The court orally granted this request immediately after it denied Cattell's motion to continue trial. Cattell opposed the request for the additional time, claiming that this request should be denied because the court denied his motion to continue the trial. Cattell reiterates this same argument on appeal.

Cattell also claims that the court abused its discretion when it denied his motion for a protective order to limit his required deposition testimony to providing written answers to written questions. This motion was based on the declaration and exhibits submitted by Dr. Karen McKibbin regarding Cattell's Autism Spectrum Disorder. According to Dr. McKibbin, requiring Cattell to testify at an oral deposition would be extremely stressful for him because of his disorder, and conducting the deposition by written questions and answers was more likely to lead to accurate responses.

The court also denied Cattell's motion to amend the case scheduling order to extend the discovery and expert witness disclosure deadlines. Cattell's former trial counsel made the motion several weeks after discovery had closed and on the same day initial expert witness disclosures were due. The bankruptcy court found that the proffered justification for the extension was "essentially nonexistent" and that there was no good

21

reason for the delay in seeking amendment of the scheduling order.

Cattell further asserts that the court abused its discretion in granting the defendants' motion in limine to exclude trial testimony from Cattell's real property valuation expert because that expert was not disclosed before the initial expert disclosure deadline. The court found that the same considerations that led the court to deny the motion to amend the case scheduling order similarly justified granting the motion in limine. The court further found that defendants would be prejudiced by permitting Cattell to present his valuation expert testimony, when the defendants presumably relied on the absence of earlier expert witness disclosures in not arranging for rebuttal expert testimony and in deciding how to prepare for trial.

There is a fundamental problem with all of Cattell's procedural, discovery, and evidentiary issues. His arguments fail to show either an application of incorrect legal standards or clearly erroneous factual findings. *See TrafficSchool.com*, 653 F.3d at 832. Cattell merely states his disagreement with the bankruptcy court's rulings and reiterates the same factual arguments he made in the bankruptcy court. These arguments cannot and do not demonstrate an abuse of discretion. Additionally, as to most of these arguments, Cattell has again failed to establish any prejudice. Like case management decisions, evidentiary and discovery rulings are only subject to reversal when they result in prejudice that likely affected the outcome of the litigation. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th

Cir. 2002); *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 927–28 (9th Cir. 2000).

Substantively, it is difficult to understand how a one-day extension to file and serve exhibits prejudiced Cattell and no such argument has been presented. The same applies to the denial of the motion for protective order. The oral deposition of Cattell occurred a long time ago and Cattell fails to show how it affected trial. In short, none of Cattell's procedural, discovery, or evidentiary issues support reversal.

**2.    Financial abuse of a vulnerable person.**

Cattell claims that the bankruptcy court should have granted him relief on his claim for financial abuse of a vulnerable person. Pursuant to Oregon Revised Statutes ("ORS") § 124.100(2), "[a] **vulnerable person** who suffers . . . damage by reason of . . . financial abuse may bring an action [to recover damages] against any person who has caused the . . . financial abuse." (Emphasis added.) The statute defines a vulnerable person as: "(A) An elderly person; (B) A financially incapable person; (C) An incapacitated person; or (D) A person with a disability who is susceptible to force, threat, duress, coercion, persuasion or physical or emotional injury because of the person's physical or mental impairment." ORS § 124.100(1)(e).

The bankruptcy court found that Cattell did not qualify as a vulnerable person based on paragraphs (A), (B), or (D) of ORS § 124.100(1)(e). On appeal, Cattell claims that the bankruptcy court should have found that he qualified as a financially incapable person under paragraph (B) or as a person with a disability under paragraph (D). Cattell

23

has not asserted that the bankruptcy court misinterpreted the Oregon statutes or otherwise misapplied Oregon law. Instead, he contends that the court's findings were clearly erroneous.

### a. Financially incapable.

ORS § 125.005(3) defines "financially incapable" as applied in ORS § 124.100(1)(e)(B) to mean:

> a condition in which a person is **unable to manage financial resources** of the person effectively for reasons including, but not limited to, mental illness, mental retardation, physical illness or disability, chronic use of drugs or controlled substances, chronic intoxication, confinement, detention by a foreign power or disappearance. "**Manage financial resources" means those actions necessary to obtain, administer and dispose of real and personal property, intangible property, business property, benefits and income.**

(Emphasis added); *see also* ORS § 124.100(1)(b) incorporating the statutory definition).

The bankruptcy court stated that it had no doubt that Cattell was able to "manage financial resources" within the meaning of the statute. The court explained that, as reflected in the record, Cattell owned and operated contracting and commercial fishing businesses, sold property, generated numerous bookkeeping documents, demonstrated familiarity with double entry bookkeeping, and created for trial numerous documents evidencing his business and personal finances. According to the court, these facts established that Cattell was not financially incapable.

Cattell has not disputed any of these findings. Instead, he claims that it is equally obvious that Cattell overly trusted Deeks as a result of his autism disorder and that he should have but failed to segregate Partnership finances from personal finances. According to Cattell, his willingness to part with legal title to the Skyliner Property by conveying it to Deeks without appropriate documentation as to why he was conveying the property to her is the best evidence of his autism-induced financial incapability. Cattell thus concludes that the court's finding that Cattell was not financially incapable was clearly erroneous.

At best, Cattell's transfer of the Skyliner Property to Deeks was some evidence from which the court arguably could have inferred that Cattell was financially incapable.[8] But the court instead chose to give greater weight to other circumstances, from which it determined that Cattell was not financially incapable. We cannot say that on the evidence presented

---

[8] We have some doubt whether Cattell's alleged over-trusting of Deeks should factor into the equation of whether or not he is financially capable within the meaning of the Oregon statute. The parties did not develop this legal argument. Further complicating matters, Oregon's abuse of vulnerable persons laws are relatively new and are relatively unique among states with similar types of protective statutes. *See* Julie Sirrs, Protecting the Elderly: Should Montana Provide Civil Cause of Action for Elder Abuse?, 40 Mont. Law. 15, 16-18 (Nov. 2014) (comparing and contrasting similar state statutes). Nor have the parties provided us with any legislative history to consider or case law interpreting the statute. *See State v. Gaines*, 206 P.3d 1042, 1047 (Or. Ct. 2009) (citing ORS § 174.020 and stating that Oregon courts may limit their consideration of legislative history to the extent such history is provided by the parties); *see also Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004) (stating that federal courts must interpret state statutes in the same manner as that state's highest court would).

that this finding was illogical, implausible, or without support in the record. When there are two permissible views of the evidence, the factfinder's choice between them is not clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

### b.   Person with a disability.

Both the bankruptcy court and Cattell recognized that ORS § 124.100(1)(d) defines who qualifies as a "person with a disability." As the statute states:

> "Person with a disability" means a person with a physical or mental impairment that:
>
> (A) Is likely to continue without substantial improvement for no fewer than 12 months or to result in death; and
>
> (B) Prevents performance of substantially all the ordinary duties of occupations in which an individual not having the physical or mental impairment is capable of engaging, having due regard to the training, experience and circumstances of the person with the physical or mental impairment.

Thus, paragraph (A) concerns the duration of the impairment and paragraph (B) concerns the effect of the impairment. The bankruptcy court did not express any doubt that Cattell had some form of mental impairment and that the duration of Cattell's impairment satisfied paragraph (A) of ORS § 124.100(1)(d).

The court instead focused on paragraph (B) and determined that there was "no evidence that Cattell's impairment fits that definition."

26

Cattell disagrees with this finding. According to Cattell, the evidence at trial showed that he "could not work in occupations, that most others can, involving interaction with co-workers . . . ." We have found no such evidence in the record provided. Nothing in Dr. McKibbin's trial testimony indicated that as result of his Autism Spectrum Disorder, Cattell was **incapable of engaging in certain occupations or in substantially all of the ordinary duties of any such occupations**. We have not been provided with her expert report submitted at trial. Nor is it readily available to us via the bankruptcy court's adversary proceeding docket.

Alternatively, Cattell claims that the court did not give "due regard to [Cattell's] training, experience and circumstances." But this statutory language plainly applies to qualify how the court should compare the impaired individual with individuals without his impairment. For instance, Cattell was incapable of practicing law because he lacked legal training—not because of his autism. But the lack of evidence that Cattell's **impairment**—his autism—left him incapable of engaging in specific occupations largely rendered Cattell's "training, experience and circumstances [other than autism]" irrelevant.

In short, Cattell has not demonstrated that the bankruptcy court clearly erred when it found that he did not qualify as a "person with a disability," and therefore was not a vulnerable person for purposes of ORS

27

§ 124.100.[9]

### 3. Fraudulent transfer claim for relief.

Finally, Cattell contends that the bankruptcy court misinterpreted Cattell's eighth claim for relief to avoid as a fraudulent transfer the conveyance of the Skyliner Property to defendant Welch. The court read the claim to be premised on § 548(a)(1) and properly denied relief under that statute as the Skyliner Property was not "an interest of the debtor in property." Rather, the property was titled in Deeks' name and owned by the Partnership.

According to Cattell, the transfer also was avoidable under ORS §§ 67.090[10] and 67.095.[11] He contends that the eighth claim for relief was

---

[9] Cattell additionally argues that the court erred in finding that Deeks (and Connor) did not financially abuse Cattell within the meaning of ORS § 124.100. Because the bankruptcy court did not err in finding that Cattell was not a vulnerable person, it is unnecessary for us to address this issue. We note, however, that this argument specifically focuses on the sufficiency of the evidence, the evidence adduced at trial, and the extent to which that evidence tended to support the parties' respective positions. Given the massive gaps in the record provided to us, the record before us does not permit meaningful review of this issue.

[10] ORS § 67.090 provides in relevant part:

(2) An act of a partner that is not for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership, binds the partnership only if the act was authorized by the other partners.

[11] ORS § 67.095 provides in relevant part:

(2) A partnership may recover partnership property from a transferee only if it proves that execution of the instrument of initial transfer did not bind the partnership under ORS 67.090 and:

* * *

28

meant to invoke these Oregon statutes. Cattell further states that the elements for his avoidance claim under Oregon partnership law were:

> (1) the property was held in the name of a person other than the partnership and transferred by instrument without an indication of the partnership; (2) such partner did not authorize the transfer of property outside the ordinary course of business; and (3) the transferee, Welch, had notice that the property was partnership property and that Deeks lacked authority to bind the partnership without Mr. Cattell's consent to the sale.

Unfortunately, the eighth claim for relief, drafted by Cattell's trial counsel, failed to refer to any of these elements or to the Oregon statutes on which Cattell now relies. Instead, the claim for fraudulent transfer cites § 548 of the Bankruptcy Code and alleges a lack of reasonably equivalent value and Cattell's insolvency. These allegations mirror the elements for a constructive fraudulent transfer claim under § 548(a)(1)(B) and have nothing to do with Cattell's so-called partnership avoidance claim under Oregon law.

Cattell contends that he is entitled to a liberal and broad interpretation of his Second Amended Complaint, citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988). But *Balistreri* is inapposite. *Balistreri* stands for the general proposition that pro se pleadings should be

_____

> (b) As to a transferee who gave value for property transferred under subsection (1)(c) of this section, proves that prior to the transfer to the transferee, the transferee knew or had received a notification that the property was partnership property and that the person who executed the instrument of initial transfer lacked authority to bind the partnership.

liberally construed. *Id.* at 699. But the Second Amended Complaint was filed by Cattell's former trial counsel. Consequently, *Balistreri* does not apply.

Alternatively, Cattell argues that the bankruptcy court erred in failing to amend the eighth claim for relief to conform to the evidence adduced at trial. According to Cattell, the fact that he did not ask the court to do so is of no importance because Cattell was incapable of requesting such relief. Rather, he maintains that the court should have sua sponte conformed the pleading to the evidence presented at trial.

Cattell has not established that amendment to conform to proof was appropriate under the circumstances.[12] Civil Rule 15, governing amendment of pleadings, applies in adversary proceedings pursuant to Rule 7015. Though Civil Rule 15(b) provides for amendments to conform to proof during or after trial, "[Civil] Rule 15(b) does not permit amendments to include issues which may be inferentially suggested by incidental evidence in the record." *Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1013 (9th Cir. 2004) (cleaned up). In other words, pleadings should not be amended to conform to proof under Civil Rule 15(b) in the absence of express or implied consent from the adverse party. *See id.* at 1012.

When, as here, the evidence the proponent relies on to support

---

[12] As a factual matter, Cattell has wholly failed to cite the portions of the record showing that he established an avoidance claim under Oregon partnership law. And the record available to us is so incomplete that it would be impossible for us to find such evidence even if we were inclined to search for it.

amendment to conform to proof directly addresses a pleaded issue, such evidence "does not put the opposing party on notice that an unpleaded issue is being raised" and hence cannot establish the requisite implied consent. *Patelco Credit Union v. Sahni*, 262 F.3d 897, 907 (9th Cir. 2001). This has been the law of this circuit for decades. *See Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir. 1986) ("It is not enough that an issue may be inferentially suggested by incidental evidence in the record; the record must indicate that the parties understood that the evidence was aimed at an unpleaded issue." (cleaned up)).

Cattell has not pointed to anything in the record suggesting that the defendants were aware before or during trial that Cattell was affirmatively seeking the avoidance of the sale of the Skyliner Property under Oregon partnership law. Consequently, we reject Cattell's amendment to conform to proof argument.

## CONCLUSION

For the reasons set forth above, we AFFIRM.[13]

---

[13] As part of his appeal, Cattell filed a motion requesting that we listen to excerpts of audio recordings from trial. According to Cattell, the audio recordings accurately depict how confused, frustrated, distressed, and nonfunctional he became during trial. This motion is hereby ORDERED DENIED. The identified audio recording excerpts are irrelevant to our resolution of the appeal.